United States District Court
Southern District of Texas
**ENTERED**
August 06, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-02973 |
| | § | |
| KLEIN INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are Plaintiff's First Amended Complaint (Doc. #19), Defendants' Motion to Dismiss (Doc. #23), Plaintiff's Response (Doc. #26), and Defendants' Reply (Doc. #27). Having considered the parties' arguments and the applicable legal authorities, the Court denies Defendants' Motion to Dismiss.

### I. Background

Plaintiff Disability Rights Texas ("Plaintiff" or "DRTx") is a nonprofit corporation that was established to fulfill the congressional mandates in the Developmental Disabilities Assistance and Bill of Rights of 2000 Act (42 U.S.C. §§ 15001–15045), the Protection and Advocacy for Individuals with Mental Illness Act (42 U.S.C. §§ 10801–10851), and the Protection and Advocacy of Individual Rights Act (29 U.S.C. § 794e) (collectively, the "P&A Acts"). Doc. #19 at 1–2.

#### a. The P&A Acts

The P&A Acts seek to protect and advocate for people with disabilities and mental illnesses. *Disability Rights Tex. v. Pacillas*, 690 F. Supp. 3d 654, 659 (S.D. Tex. 2023). To achieve

this end, the P&A Acts offer states funding to assist with establishing a protection and advocacy system for individuals with mental illnesses and disabilities. *Id.* at 659–60. But to receive funding, states are required to establish a protection and advocacy organization, like DRTx, that is independent from state agencies that provide treatment or services to individuals with disabilities or mental illnesses. *Id.* at 659–61. The P&A Acts authorize the protection and advocacy organizations to (1) "pursue administrative, legal, and other appropriate remedies" on behalf of individuals with disabilities or mental illnesses; (2) access facilities that provide care, treatment, services, or supports to individuals with disabilities or mental illnesses, and (3) access records related to their clients. *Id.* at 661 (citing relevant portions of the P&A Acts).

### b.   Factual Background and Procedural History

Here, DRTx contends that pursuant to its authority under the P&A Acts, it sought to access schools in the Klein Independent School District ("KISD"), but KISD has used "unnecessary and unreasonable delay tactics" to thwart DRTx's access. Doc. #19 ¶ 15. DRTx asserts that KISD has segregated campuses, such as the Therapeutic and Readiness Center ("TRC"), that serve students with disabilities. *Id.* ¶ 16. DRTx received information and complaints alleging that these KISD campuses are "overly restrictive environments" that pose a "substantial risk" of physical and emotional abuse or mistreatment to children with disabilities. *Id.* DRTx also claims that students receive inadequate services from special education behavior programs on KISD's campuses. *Id.*

Concerned that these complaints had merit, DRTx emailed the attorneys representing KISD and Jenny McGown ("McGown"), KISD's Superintendent, on March 16, 2023, to schedule a tour of the TRC campus, in accordance with its authority under the P&A Acts. *Id.* ¶ 17. After not receiving a response, DRTx once again emailed opposing counsel on March 21 to schedule a campus visit. *Id.* ¶ 19. KISD and McGown's attorneys replied denying DRTx access to the

campus based on their belief that DRTx sought to monitor the campus to bolster discovery in a pending, separate litigation between the parties. *Id.* ¶ 20. Throughout April and early May, DRTx sent additional notices attempting to schedule a visit to the TRC campus, as well as visits to six other KISD schools that have special education behavior programs that serve students with disabilities and behavioral difficulties. *Id.* ¶ 21. On May 5, 2023, opposing counsel stated that DRTx did not have federal authority to monitor "traditional schools," seemingly in reference to the six additional schools that DRTx mentioned. *Id.* ¶ 22. KISD and McGown's attorneys also reiterated their concern that DRTx would improperly use information obtained from its visit to the campuses in the parties' other litigation. *Id.* In subsequent emails regarding the campus visits, KISD and McGown's attorneys allegedly stated that KISD "has policies regarding who can access and when and as things stand right now[,] [DRTx] do[es] not have that permission." *Id.* ¶ 23. On May 15, the parties conferred telephonically and seemed to reach an oral agreement that would allow DRTx to monitor the campuses so long as those DRTx attorneys who were engaged in the other litigation against KISD did not participate in the visit and information obtained during the monitoring would remain confidential. *Id.* ¶ 24. However, that agreement fell through. In early June, the parties were still communicating about an appropriate time to visit the campuses. Because it was now the summer, DRTx sought to determine which KISD campuses would be serving students with "extended school year services." *Id.* ¶ 26. In mid-June, DRTx learned that the TRC campus would offer extended school year services in July, so DRTx requested July 18, 2023, as the date to monitor the campus. July 18 did not work, so the parties continued to confer throughout the month of July on a possible date.

On August 11, 2023, DRTx filed this lawsuit against KISD and McGown. Doc. #1. KISD and McGown jointly moved to dismiss DRTx's Complaint, arguing that only the KISD Board of

Trustees can adopt policies regarding access to school campuses. Doc. #17; Doc. #19 ¶ 38. Meanwhile, DRTx continued to confer with Mr. Eric Nichols, opposing counsel, about the visits. Mr. Nichols asserted that he also represents the Board of Trustees. As such, DRTx asked that he notify the Board of Trustees of its plan to access and monitor the campuses. Doc. #19 ¶ 39. Then days later, Mr. Nichols allegedly retracted his statement regarding his representation of the Board of Trustees and stated that if DRTx wanted to correspond directly with the Board, it could. *See id.* ¶ 40. As such, DRTx notified the KISD Board of Trustees about its six-month interaction with KISD and McGown's counsel regarding the campus visits and the delay tactics used, which DRTx alleges violated the P&A Acts. *Id.*

On September 15, two DRTx staff members monitored the TRC campus. At the conclusion of their visit, they stated that they were going to go monitor special education classrooms at Benfer Elementary School, but when they arrived, a KISD police officer allegedly refused to let them access the campus. *Id.* ¶ 42. The officer also allegedly issued the DRTx staff members verbal criminal trespass warnings, which banned them from accessing any KISD premises under a threat of arrest and criminal prosecution. *Id.* DRTx once again reached out directly to the Board of Trustees regarding its attempts to visit the campuses, but DRTx was allegedly told by another attorney representing KISD and McGown that DRTx could not communicate directly with the Board of Trustees. The attorney stated that the same attorneys who represent KISD and McGown also represent the Board of Trustees. *Id.* ¶ 44.

On September 25, DRTx amended its Complaint, which is the operative pleading before the Court. Doc. #19. In its Amended Complaint, DRTx sued (1) McGown in her individual and official capacity for violating the P&A Acts; (2) McGown in her official capacity for violating 42

4

U.S.C. § 1983 ("Section 1983"); and (3) then-president of the Board of Trustees Rob Ellis[1] in his

official capacity for violating Section 1983.  *Id.*  Notably, Plaintiff dropped its claims directly

against KISD in its Amended Complaint.  *See id.* at 2–3.  Thus, any references herein to

"Defendants" will refer to McGown and Arellano.  In its Amended Complaint, Plaintiff seeks

injunctive and declaratory relief against Defendants.  *Id.* at 16–17.  On October 9, 2023,

Defendants jointly moved to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6).

Doc. #23.

## II.      Legal Standard: Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed for failure to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  The pleading standard is set forth in Federal Rule of Civil Procedure

8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955).  The standard

"does not require 'detailed factual allegations,' but it demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555).  Plausibility exists when the complaint includes factual

content "that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  The complaint must show more than a "sheer

---

[1] On June 16, 2024, Rob Ellis filed notice with the Court that Cathy Arellano ("Arellano") was elected President of the KISD Board of Trustees.  Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he sought to automatically substitute her in his place.  Doc. #35.  The Court adopts the substitution and will solely refer to Arellano when addressing the claim Plaintiff originally asserted against Rob Ellis.

5

possibility that the defendant has acted unlawfully," and pleading facts that are "'merely consistent with' a defendant's liability" will not suffice. *Id.*; *see Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Courts accept "the well-pleaded factual allegations in the complaint as true" but do "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

### III.   Analysis

In their Motion to Dismiss, Defendants contend that Plaintiff solely seeks relief through Section 1983 and present three bases to dismiss Plaintiff's claims: (1) Plaintiff fails to establish municipal liability; (2) Plaintiff's official capacity claims against Defendants are redundant; and (3) McGown is not individually liable for injunctive or declaratory relief. Doc. #23. The Court will address each argument in turn.

#### a.   Failure to Establish Municipal Liability Pursuant to Section 1983

Defendants first argue that Plaintiff "fails to plead any facts to plausibly tie any alleged violations to a policy or custom of the KISD Board of Trustees" but instead tie the alleged policy to McGown. Doc. #23 at 4. In response, Plaintiff points to its allegations in its Amended Complaint regarding the Board of Trustees' policy titled "GKA—Community Relations: Conduct on School Premises." Doc. #26 at 10 (citing Doc. #19 ¶¶ 63–64).

Under Section 1983, a municipality can only be liable "for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). Thus, "[t]o establish municipal liability under [Section] 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To do so, the plaintiff must

satisfy three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542.

Quoting the Fifth Circuit, Defendants concede that the board of trustees has the final policymaking authority in an independent school district. *Id.* at 4 (relying on *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995)). As such, Defendants assert that Plaintiff's Section 1983 claim fails because McGown, as KISD's Superintendent, is simply a decisionmaker and is not a policymaker as required for municipal liability. *Id.* at 5. But Defendants misinterpret Plaintiff's arguments. Plaintiff does not assert that McGown *created* a policy that prohibited DRTx from accessing the KISD campuses. Instead, Plaintiff alleges that the KISD Board of Trustees has a policy, presumably the "GKA—Community Relations: Conduct on School Premises," that allows district officials and school resource officers to refuse a person access to KISD property. Doc. #26 at 10 (citing Doc. #19 ¶¶ 63–64); *see also* Doc. #19 ¶ 54. As such, Plaintiff has properly identified the policymaker as the Board of Trustees, not McGown. Further, Defendants completely ignore Plaintiff's Section 1983 claim against Arellano in her official capacity as President of the Board of Trustees. Doc. #19 at 15–16. Plaintiff's official capacity claim against Arellano is the same as Plaintiff suing the Board of Trustees directly. *See Garza v. Escobar*, 386 F. Supp. 3d 794, 804 (S.D. Tex. 2019) ("A [Section] 1983 suit against a person in his official capacity is a suit against his office, and is no different from a suit against the entity itself."). Against Arellano, Plaintiff similarly asserts that the Board of Trustees "has official

policies regarding who can access KISD campuses" and again names "GKA—Community Relations: Conduct on School Premises" as the policy that "directly violates the P&A Acts by permitting Defendant McGown to refuse DRTx reasonable unaccompanied access to KISD campuses." Doc. #19 ¶¶ 63–64. Moreover, in its recitation of the factual background of this case, Plaintiff alleges that opposing counsel stated in an email that KISD "has policies regarding who can access and when and as things stand right now[,] [DRTx] do[es] not have that permission." *Id.* ¶ 23. This further supports Plaintiff's claim that an official policy was the moving force behind the violations alleged here. Thus, Plaintiff has properly alleged that the KISD Board of Trustees has an official policy that was the moving force behind Defendants prohibiting DRTx from accessing and monitoring the KISD campuses, in violation of the P&A Acts. *See id.* ¶¶ 52–66. Accordingly, Defendants' Motion to Dismiss is denied as to this claim.

### b.    Official Capacity Claims Against McGown and Arellano

Next, Defendants assert that Plaintiff's official capacity claims against McGown and Arellano should be dismissed because KISD is already a party to this suit, thus the official capacity claims are redundant. Doc. #23 at 7–8. However, this argument fails because Plaintiff does not assert any claims directly against KISD in its Amended Complaint. Doc. #19. While Plaintiff did assert claims against KISD in its Original Complaint (Doc. #1), in its Amended Complaint, it abandoned those claims against KISD and instead asserted claims against McGown in her official and individual capacities and against Arellano in her official capacity. As such, Defendants' Motion to Dismiss is denied as to this claim.

### c.    McGown's Individual Liability for Injunctive or Declaratory Relief

Finally, Defendants seek to dismiss Plaintiff's claim against McGown in her individual capacity, seemingly on the basis that Section 1983 does not permit injunctive relief against state

officials in their individual capacity. Doc. #23 at 8–9 (citing to mostly nonbinding cases regarding Section 1983 claims seeking injunctive relief from an individual). Interestingly, however, Plaintiff does not assert a Section 1983 claim against McGown in her individual capacity. Doc. #19 at 13–14. The only claim that Plaintiff brings against McGown in her individual capacity is for allegedly violating the P&A Acts. *Id.* at 13. Because Defendants seek to dismiss a claim that Plaintiff did not even assert, Defendants' Motion to Dismiss is denied as to this claim.

### IV.   Conclusion

In conclusion, Defendants' Motion to Dismiss (Doc. #23) is hereby DENIED because Plaintiff asserted sufficient factual allegations to support a municipal liability claim under Section 1983, Plaintiff's official capacity claims against McGown and Arellano are not redundant because KISD is no longer a party to this lawsuit, and Plaintiff does not assert a Section 1983 claim against McGown in her individual capacity.

It is so ORDERED.

_____AUG 0 6 2024_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge

9