IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-cv-2973 |
| | § | |
| JENNY MCGOWN, in her individual | § | |
| capacity and her official capacity as the | § | |
| Superintendent of Klein Independent School | § | |
| District, and CATHY ARELLANO, in her | § | |
| official capacity as the President of the | § | |
| Board of Trustees for Klein Independent | § | |
| School District, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS AND
BRIEF IN SUPPORT**

BETH MITCHELL
State Bar No. 00784613
Disability Rights Texas
2222 W. Braker Lane
Austin, TX 78758
(512) 454-4816 Phone
(512) 454-3999 Fax
bmitchell@drtx.org

SHILOH CARTER
State Bar No. 24080321
Disability Rights Texas
100 Glenborough Drive, Suite 600
Dallas, TX 75247
(832) 584-0607 Phone
(512) 454-3999 Fax
scarter@drtx.org

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................iii

I.   PROCEDURAL POSTURE AND REQUESTED DISPOSITION ...................................1

II.  BACKGROUND AND PROCEDURAL HISTORY...........................................................2

III. PREVAILING-PARTY STATUS WILL BE ESTABLISHED UPON
     ENTRY OF THE FINAL ORDER ...................................................................................4

     A. Legal Standard: Section 1988 Fee Awards Are the Rule, Not the
        Exception ........................................................................................................4

     B. Upon Entry of the Final Order Incorporating Exhibit A, DRTx Will Be
        a Prevailing Party ...........................................................................................6

IV.  DRTX'S REQUESTED FEES ARE REASONABLE AND NECESSARY
     UNDER THE LODESTAR METHOD, AS COMPLEMENTED BY THE
     *JOHNSON* FACTORS ...................................................................................................7

     A. Under the Lodestar, Plaintiff's Reasonable and Necessary Fees are
        $163,735.00......................................................................................................8

        1. Plaintiff's Expended Attorney Hours are Reasonable and Necessary ...................8

        2. Plaintiff's Counsels' Requested Rates are Reasonable........................................10

           a. The Prevailing Market Rate is Based on the Rate in the Southern
              District of Texas, Houston Division ................................................................10

           b. Plaintiff's Hourly Rates are Reasonable in the Prevailing Market .................11

        3. Plaintiff's Lodestar is $163,735.00....................................................................12

     B. The Relevant *Johnson* Factors Support Awarding Plaintiff's Counsel
        the Lodestar Amount......................................................................................12

        1. Time and Labor Required ...................................................................................12

        2. Novelty and Difficulty of the Question ..............................................................13

        3. Skill Requisite to Perform the Legal Services Properly .......................................14

i

4.  Preclusion of Other Employment by Attorneys Due to Acceptance of the Case .................................................................................................14

5.  The Customary Fee ...............................................................................14

6.  The Amount Involved and the Results Obtained ................................15

7.  Experience, Reputation, and Ability of the Attorneys .........................16

8.  Awards in Similar Cases .......................................................................16

V.  DRTX IS ENTITLED TO ITS COSTS ...........................................................17

CONCLUSION .................................................................................................17

CERTIFICATE OF SERVICE ............................................................................18

# TABLE OF AUTHORITIES

## CASES

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................................10

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*,
    532 U.S. 598 (2001)..................................................................................................5

*Casey v. City of Cabool*,
    12 F.3d 799 (8th Cir. 1993) ...................................................................................11

*Combs v. City of Huntington*,
    829 F.3d 388 (5th Cir. 2016) ...................................................................................8

*Cruz v. Hauck*,
    762 F.2d 1230 (5th Cir. 1985) ............................................................................5, 9

*El Paso Indep. Sch. Dist. v. Richard R.*,
    591 F. 3d 417 (5th Cir. 2009) ..................................................................................6

*Elizondo v. Spring Branch Indep. Sch. Dist.*,
    2025 WL 3003693 (S.D. Tex. Oct. 27, 2025)........................................................11

*Energy Mgmt. Corp. v. City of Shreveport*,
    467 F.3d 471 (5th Cir. 2006) ...................................................................................5

*Energy Mgmt. Servs., LLC v. City of Alexandria*,
    739 F.3d 255 (5th Cir. 2014) ...................................................................................5

*Frew v. Taylor*,
    688 F. App'x 249 (5th Cir. 2017) ............................................................................6

*Gagnon v. United Technisource, Inc.*,
    607 F.3d 1036 (5th Cir. 2010) .................................................................................8

*Great Lakes Gen. Agency, Inc. v. Outsourced Risk Managers, LLC*,
    2025 WL 3050165 (S.D. Tex. Sept. 30, 2025) .....................................................12

*Grisham v. City of Fort Worth*,
    837 F.3d 564 (5th Cir. 2016) ...................................................................................5

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).......................................................................................5, 7, 8, 9

*Hosp. House, Inc. v. Gilbert*,
    298 F.3d 424 (5th Cir. 2002) ................................................................5

*Jackson v. Galan*,
    868 F.2d 165 (5th Cir. 1989) ................................................................5

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..............................7, 8, 12, 13, 14, 15, 16

*Johnson v. State of Miss.*,
    606 F.2d 635 (5th Cir. 1979) ................................................................5

*Kirchberg v. Feenstra*,
    708 F.2d 991 (5th Cir. 1983) ................................................................5

*League of United Latin American Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*,
    119 F.3d 1228 (5th Cir. 1997) ........................................................8, 13

*Lefemine v. Wideman*,
    568 U.S. 1 (2012) ................................................................................5

*McClain v. Lufkin Indus., Inc.*,
    649 F.3d 375 (5th Cir. 2011) ..............................................................10

*Millennium Rest. Grp., Inc. v. City of Dallas*,
    191 F. Supp. 2d 802 (N.D. Tex. 2002) .................................................5

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ..........................................................................10

*Perdue v. Kenney A.*,
    559 U.S. 542 (2010) ........................................................................7, 8

*Sanchez v. City of Austin*,
    774 F.3d 873 (5th Cir. 2014) ................................................................5

*Watkins v. Fordice*,
    7 F.3d 453 (5th Cir. 1993) ....................................................................8

## STATUTES AND REGULATIONS

28 U.S.C. § 1920 ....................................................................................17

42 U.S.C. § 1988(b) ................................................................1, 4, 6, 7, 17

## OTHER SOURCES

Enrollment in Texas Public Schools 2024-25, Texas Education Agency (2026),
    https://tea.texas.gov/reports-and-data/school-performance/accountability-research/enroll-2024-25.pdf (last visited on Feb. 11, 2026)....................................................15

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 1988(b), Plaintiff Disability Rights Texas ("DRTx") moves for an award of reasonable and necessary attorneys' fees and costs. DRTx files this motion to comply with the Court's fee-briefing schedule set at the January 16, 2026 status conference. As announced on the record at that conference, the Parties have reached agreement on the substantive monitoring-access protocols to be incorporated into the Court's final order; however, entry of the final order remains pending.

On February 13, 2026, DRTx filed a Motion for Entry of Final Permanent Injunction and Order of Dismissal (incorporating Exhibit A) and a Motion to Hold the Fee-Motion Deadline in Abeyance pending entry of the final order; both motions remain pending. To preserve timeliness under Rule 54(d)(2), DRTx files this motion now and respectfully requests that the Court defer any merits ruling on fees and costs until entry of the final order, and then permit a short supplemental submission if needed.

## I.      PROCEDURAL POSTURE AND REQUESTED DISPOSITION

On November 8, 2025, the Court ordered counsel to confer and submit a proposed agreement consistent with the Court's on-the-record guidelines, and the Court also set a status conference for January 16, 2026. At the January 16, 2026 status conference, counsel advised the Court that an agreement had been reached. The Court directed that the agreement be incorporated into the final order and required Plaintiff to submit its fee briefing by February 15, 2026, with Defendants' response due two weeks later.

After the status conference, Plaintiff circulated Exhibit A reflecting the terms announced at the status conference in court. Defendants requested two discrete timing edits (regarding the "reasonable time" provision, and the escort time between designated areas). Plaintiff incorporated

those edits, and Defendants' counsel subsequently confirmed to Plaintiff's counsel that Exhibit A, as revised, was acceptable.

On February 13, 2026, DRTx filed a Motion for Entry of Final Permanent Injunction and Order of Dismissal incorporating Exhibit A and requesting that the final order retain the Court's jurisdiction to enforce and interpret the incorporated terms. Plaintiff requests that the final order bind all Defendants, including the KISD Board and Defendant Jenny McGown, in her official capacity as Superintendent of Klein Independent School District. Defendants oppose entry of a final order binding the Board and contend that the Court should first rule on the pending summary-judgment motions addressing municipal-liability issues before entering any final order that binds the Board. Also on February 13, 2026, because entry of the final order remained pending, DRTx filed a Motion to Hold the Fee-Motion Deadline in Abeyance and requested that the fee-briefing deadlines run from the date the final order is entered.

Accordingly, DRTx files this fee motion to comply with the Court's scheduling directive and respectfully requests that the Court defer any merits ruling on fees and costs until entry of the final order, and permit Plaintiff to file any necessary supplemental submission within seven (7) days after entry of that order.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Although the Parties have now reached agreement on substantive monitoring-access protocols, that agreement did not come easily or quickly. It was achieved only after vigorous and time-consuming dispute requiring substantial work by DRTx's counsel to overcome Defendants' sustained refusal to recognize and honor DRTx's federally mandated monitoring-access authority under the Protection and Advocacy Acts ("P&A Acts") at Klein Independent School District ("KISD") campuses serving students with disabilities, including KISD's "traditional" campuses.

In March 2023, DRTx provided notice of its intent to conduct a monitoring visit and attempted to coordinate mutually agreeable dates. KISD—through counsel—responded that DRTx lacked authority to monitor "traditional schools," asserting that the P&A Acts permit monitoring only of facilities such as "prison schools" or juvenile-justice-type settings. Doc. 41-1, Ex. A (Agreed Stipulations of Fact).

DRTx repeatedly attempted to resolve the dispute without litigation, including providing assurances regarding confidentiality and the scope of monitoring. KISD nevertheless maintained its position, expressly invoking Board-approved policies as the basis for denying access, and advising that, "as things stand right now," DRTx did not have permission to access KISD campuses. Doc. 41-1, Ex. A, No. 30.

After continued obstruction, DRTx filed this action on August 11, 2023 seeking declaratory and injunctive relief to enforce its federal monitoring-access rights. Doc. 1. After the initial Complaint was filed, DRTx continued to engage with KISD over access and repeatedly contacted the KISD Board regarding the obstruction and requesting intervention. The dispute escalated when a KISD police officer issued criminal-trespass warnings to DRTx staff, barring them from entering KISD campuses under threat of arrest and prosecution. Doc. 41-1, Ex. A, No. 42. With no Board action to remedy the denial, DRTx amended its complaint on September 25, 2023 to add the KISD Board as a defendant. Doc. 19.

Defendants moved to dismiss the amended complaint, arguing that DRTx failed to allege municipal liability and could not maintain an action against Superintendent McGown. Doc. 23. The Court denied the motion, holding that "Plaintiff has properly alleged that the KISD Board of Trustees has an official policy [GKC (Local)] that was the moving force behind Defendants

3

prohibiting DRTx from accessing and monitoring the KISD campuses, in violation of the P&A Acts." Doc. 38 at 8.

After the Motion to Dismiss, the parties agreed to stipulations of fact, in which the Defendants acknowledged that by August 11, 2023 the Board was fully aware that Board policies GKA (Local) and GKC (Local) were being relied upon to deny DRTx monitoring access to KISD campuses. Doc. 41-1, Ex. A, No. 80. The parties then proceeded on cross-motions for summary judgment. Docs. 41–46.

At the January 16, 2026 status conference, counsel advised the Court that the Parties had reached agreement on the substantive monitoring-access protocols to be incorporated into the final order; the remaining dispute concerns only the scope of parties bound by that order.

DRTx seeks reasonable and necessary attorneys' fees in the amount of $163,735.00 and costs of $5,878.85. The reasonableness and necessity of the requested fees are established by this Brief, the declarations of counsel Beth Mitchell and Shiloh Carter (attached as Exhibits A and B), and their contemporaneous time records. Plaintiff has filed a Bill of Costs with supporting receipts; a copy is included as Exhibit C for the Court's convenience.

## III.    PREVAILING-PARTY STATUS WILL BE ESTABLISHED UPON ENTRY OF THE FINAL ORDER

### A.    Legal Standard: Section 1988 Fee Awards Are the Rule, Not the Exception

Section 1988 provides that, in an action to enforce § 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff is a "prevailing party" where it obtains "actual relief on the merits of [its] claim" that is judicially sanctioned—such as an enforceable judgment, consent decree, or an order that incorporates settlement terms or retains jurisdiction to enforce them—and that relief materially alters the legal relationship between the parties in a way that directly benefits the plaintiff.

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001); *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006).

The Fifth Circuit has specifically recognized that where a district court "incorporates the terms of the settlement agreement in the order or expressly retains jurisdiction over its enforcement," the resulting order is the "functional equivalent of a consent decree" for prevailing-party purposes. *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002); see also *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 259 (5th Cir. 2014) (prevailing-party threshold met where the court embodied the parties' agreement in an order by retaining jurisdiction to enforce it).

Once a plaintiff qualifies as a prevailing party, attorneys' fees "should ordinarily be awarded … unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The Fifth Circuit has repeatedly emphasized that "special circumstances" are exceedingly narrow. *Sanchez v. City of Austin*, 774 F.3d 873, 878–80 (5th Cir. 2014); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985). Good faith is not a special circumstance. *Johnson v. State of Miss.*, 606 F.2d 635, 637 (5th Cir. 1979); *Kirchberg v. Feenstra*, 708 F.2d 991, 999 (5th Cir. 1983); *Grisham v. City of Fort Worth*, 837 F.3d 564, 569 (5th Cir. 2016). Nor does qualified immunity bar an award of fees where the plaintiff obtains prospective relief. *Millennium Rest. Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002) (citing *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989)); see also *Lefemine v. Wideman*, 568 U.S. 1, 4–5 (2012) (plaintiff who obtained injunctive relief was prevailing party even though damages were denied).

**B.**  **Upon Entry of the Final Order Incorporating Exhibit A, DRTx Will Be a Prevailing Party**

DRTx will qualify as a prevailing party upon entry of a final order that embodies the Parties' agreement as judicially enforceable relief. The Parties have reached agreement on the substantive monitoring-access and non-interference obligations reflected in Exhibit A. DRTx has moved for entry of a final order that attaches and incorporates Exhibit A and retains the Court's jurisdiction to enforce and interpret the incorporated terms. Under Fifth Circuit precedent, once entered, an order that incorporates settlement terms and/or expressly retains jurisdiction to enforce them is the functional equivalent of a consent decree and satisfies the prevailing-party standard under § 1988. *Frew v. Taylor*, 688 F. App'x 249, 254 (5th Cir. 2017), as revised (Apr. 28, 2017) ("A party that successfully obtains a settlement agreement that is made enforceable through a consent decree is a prevailing party."), citing, *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F. 3d 417, 422 (5th Cir. 2009). Accordingly, because entry of the final order may occur after the fee-briefing deadline, DRTx respectfully requests that the Court defer ruling on this motion until the final order is entered and grant leave to supplement promptly after entry.

The relief reflected in Exhibit A delivers the central objectives of this litigation. Among other things, Exhibit A provides that no advance notice is required for DRTx to enter KISD campuses during regular school hours (subject to a limited first-entry annual tour procedure), confirms monitoring access at KISD campuses serving students with disabilities (including "traditional" campuses), and limits escorting and monitoring by requiring "Reasonable Unaccompanied Access" such that KISD staff do not remain within "Sight or Sound" of DRTx communications. These provisions materially alter the parties' legal relationship by converting DRTx's asserted federal monitoring-access rights into court-enforceable obligations governing Defendants' future conduct once incorporated into the Court's final order.

6

No special circumstances justify denying fees. The Court's scheduling directive expressly contemplated a fee motion under Rule 54 and § 1988 and reserved that issue for resolution. Defendants' prior position denying DRTx's monitoring access—culminating in criminal-trespass warnings—was the predicate for this suit and underscores why prospective, enforceable relief was necessary. Accordingly, DRTx is entitled to a reasonable attorneys' fee award under § 1988.

Plaintiff does not seek a fee award in the absence of an order embodying judicially enforceable relief. Rather, Plaintiff files this motion solely to comply with the Court's fee-briefing schedule and respectfully requests that the Court defer ruling until entry of the final order. Upon entry of that order, Plaintiff will qualify as a prevailing party under settled Fifth Circuit precedent, and the Court may then resolve the fee request on the existing briefing, supplemented as necessary.

## IV.    DRTX'S REQUESTED FEES ARE REASONABLE AND NECESSARY UNDER THE LODESTAR METHOD, AS COMPLEMENTED BY THE *JOHNSON* FACTORS

The Supreme Court has established a "strong presumption" that the lodestar—the product of multiplying hours reasonably expended by a reasonable hourly rate—represents "the reasonable fee" for prevailing parties. *Perdue v. Kenney A.*, 559 U.S. 542, 553-54 (2010); *see also*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). For fees under Section 1988, the lodestar roughly approximates what an attorney would have received if representing a client who paid by the hour. *See id.* at 551.

The *Perdue* Court contrasted the lodestar method with one the Fifth Circuit "set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), which listed twelve factors that a court should consider in determining a reasonable fee." *Id*. at 550-51. The *Perdue* Court's reasoning clearly indicates a strong preference for the lodestar method over the *Johnson* factors: "[The *Johnson*] method, however, 'gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed

unlimited discretion in trial judges and produced disparate results.'" *Id*. Post-*Perdue*, the Fifth Circuit has treated the *Johnson* factors as a *complement* to the lodestar. *See*, *e.g.*, *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016) ("[t]hough the lodestar is presumed reasonable, … the court may enhance or decrease it based on the . . . *Johnson* factors"). Plaintiff does not seek an enhancement under Johnson. Consistent with that approach, this Brief discusses first the *Perdue* lodestar and then the relevant *Johnson* factors.

### A.      Under the Lodestar, Plaintiffs' Reasonable and Necessary Fees are $163,735.00

#### 1.  *Plaintiff's Expended Attorney Hours are Reasonable and Necessary*

"The party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "[C]ourts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours …." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). Plaintiff's lawyers' billing records are summarized in the Appendix (Exhibits A & B) and contain task descriptions in chronological order, calculated to the tenth of an hour.

All time claimed in a fee motion must be reasonable in order for it to be compensable. *League of United Latin American Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). Ms. Mitchell, as lead counsel, explains in her declaration how she adjusted downward the hours shown in the billing records in order to arrive at the reasonable number of hours claimed for compensation in this motion.

Specifically, Ms. Mitchell exercised discretionary billing judgment by eliminating or reducing time she would not charge to any prevailing plaintiff if that plaintiff, instead of the Defendant, were paying the bill, consistent with *Hensley*. 461 U.S. at 434. ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original). Time increments that were eliminated or reduced are evident in Exhibits A & B, filed in the Appendix. Additionally, hours eliminated, although could be included, is time spent preparing this motion for fees and costs, and drafting final access terms identified in Exhibit A. *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985). As lead counsel, Ms. Mitchell reviewed not only her billing records but the records of her co-counsel, Mrs. Carter, to ensure all time claimed by counsel for the case reflected time that was accurate, reasonable, and necessary. Adjustments to Ms. Mitchell's and Mrs. Carter's billing primarily include elimination of billing by multiple lawyers in conferences, time spent informally communicating with opposing counsel, and time spent reviewing materials with younger attorneys on the case. In addition, Ms. Mitchell billed 280.70 hours, but has voluntarily reduced her billable hours by 16% (45.30 hours) to 235.40 hours. *See* Appendix Exhibit A, Declaration of Beth Mitchell. Mrs. Carter billed 115.20 hours, but has voluntarily reduced her billable hours by 15% (17.3 hours) to 97.9 hours. Appendix Exhibit B, Declaration of Shiloh Carter.

Although Ms. Mitchell and Mrs. Carter had the assistance and benefit of a third co-counsel, Kym Rogers, Plaintiff is not seeking an award of attorney's fees for any of Mrs. Roger's 105.80 hours spent prosecuting this case. *See* Appendix, Exhibit A, Declaration of Beth Mitchell (discussing reviewing time records for Mrs. Rogers). Nor is Plaintiff seeking an award for the 30.3 hours spent by Plaintiff's paralegals, although such time is compensable under Section 1988. *See*

*id.* (discussing reviewing time records for Ms. McNair and Ms. Phillips). *See also, Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287-88 (1989).

Billing hours claimed by Plaintiff merit additional comments at the outset. Plaintiff's attorneys have not had an access case where a defendant has denied municipal liability. This unexpected filing required Plaintiff's counsel to research a relatively unfamiliar area of law and draft a Response to Defendants' Motion to Dismiss. *See* Doc. Nos. 23 and 26. Accordingly, no hours are claimed that are excessive, redundant, or otherwise unnecessary; all of the hours were reasonably and necessarily expended litigating this case, as evidenced by the declarations and time summaries contained in the Appendix.

### 2.  *Plaintiff's Counsels' Requested Rates are Reasonable*

Once the compensable time is determined, the Court's second step of the lodestar is to determine a reasonable hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In determining prevailing rates in the community, courts compare the requested rates with those "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 896 n.11; *see also McClain v. Lufkin Indus., Inc.*, 649 F.3d 375, 381 (5th Cir. 2011) (quoting language above in *Blum*).

### a.  **The Prevailing Market Rate is Based on the Rate in the Southern District of Texas, Houston Division.**

This case was tried in Houston. DRTx offices in Houston and Plaintiff's counsel have both been admitted to practice law in the Southern District of Texas for many years. In the alternative, Plaintiff's lead counsel's rates are consistent with the rates in her home-market of Austin. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir. 2011), *cert denied*, 565 U.S. 1036 (2011) ("[I]n the unusual cases where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting

point for the lodestar calculation.").This expansion of the geographic community is consistent with

the purpose of 42 U.S.C. § 1988 and Congress's intent that attorneys' fees serve to ensure civil

rights are enforced. *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (internal citation

omitted), *cert. denied*, 513 U.S. 932 (1994).

### b.  Plaintiff's Hourly Rates are Reasonable in the Prevailing Market.

The chart below sets out the lawyers for whom Plaintiff seeks compensation, their years of

licensure, and their billing rates:

| Lawyer | State and Year of Licensure | Hourly Rate | Voluntarily Reduced Rate |
|---|---|---|---|
| Beth Mitchell | Florida -1991; Texas -1992 | $700 | $550 |
| Shiloh Carter | Texas - 2013 | $400 | $350 |

As set forth in detail in Ms. Mitchell's declaration, she has litigated over twenty P&A

access cases alone and trains other P&As nationwide on P&A access law. This expertise is in

addition to her extensive experience litigating class action and individual claims on behalf of

individuals with disabilities in her thirty years of practicing in Texas. Mrs. Carter's declaration

likewise sets forth her experience, expertise, and reputation that make clear her requested rate is

also reasonable.

These rates are also well within rates that have been approved in the Southern District of

Texas in recent years. Indeed, this past October, a Southern District Judge ordered attorney fees

based on hourly rates from $480 (associates) to $873.75 (partners) charged in the Houston legal

community in a Voting Rights Act action. *Elizondo v. Spring Branch Indep. Sch. Dist.*, No. CV

H-21-1997, 2025 WL 3003693, at *6 (S.D. Tex. Oct. 27, 2025). In a recent commercial litigation

case, the Southern District Court found that "rates around $600 per hour to be reasonable for

partner-level attorneys" and "found a range of around $300-$560 (adjusted for inflation)

reasonable for associate-level attorneys." *Great Lakes Gen. Agency, Inc. v. Outsourced Risk Managers, LLC*, No. 4:22-CV-02643, 2025 WL 3050165, at *4-5 (S.D. Tex. Sept. 30, 2025) (Associate was licensed since 2017 and partner was licensed since 2006). The charted rates, well-supported by the evidence and case law, are the rates the Court should determine to be reasonable and use to calculate the lodestar.

### 3. Plaintiff's Lodestar is $163,735.00

Based on the reasonable hours documented in Exhibits A and B and on the reasonable hourly rates discussed above and identified in Exhibits A and B, the presumptively correct lodestar is:

| Lawyer | Hours | Lodestar |
|---|---|---|
| Beth Mitchell | 235.40 | $129,470 |
| Shiloh Carter | 97.9 | $34,265 |
| **Total** | 333.30 | $163,735 |

Once the lodestar is calculated, this amount can be adjusted depending on the factors identified in *Johnson*, 488 F.2d at 717-19. As discussed *infra*, the relevant *Johnson* factors support this Court's awarding Plaintiff's counsel their requested fees.

### B. The Relevant *Johnson* Factors Support Awarding Plaintiff's Counsel the Lodestar Amount

The following guidelines were excluded as not-relevant to the analysis: time limitations imposed by the client or the circumstances, the "undesirability" of the case, and the nature and length of the professional relationship with the client.

### 1. Time and Labor Required

Plaintiff has submitted detailed, summaries of contemporaneously created time records that contain the date, activity, the number of hours spent (calculated to the tenth of an hour), time

actually "billed" (allowing for the exercise of billing judgment), and a short description of services rendered. *See* Appendix, Exhibits A & B. These records more than satisfy the standard established in *League of United Latin American Citizens # 4552*, 119 F.3d at 1233. Further, Ms. Mitchell has reviewed the billing for herself and Mrs. Carter to ensure there was no "duplication of effort" cautioned against by the court. *See, Johnson*, 488 F.2d at 717. Accordingly, no hours claimed are excessive, redundant, or otherwise unnecessary.

### 2. *Novelty and Difficulty of the Question*

In most recent P&A access matters handled by Ms. Mitchell, defendants acknowledged DRTx's federal access authority and the cases resolved before dispositive briefing, and no school district has denied DRTx access so counsel could not rely on a prior set of case-specific pleadings tailored to the issues presented here and instead prepared the key filings anew. For example, in support of Plaintiff's Motion for Summary Judgment, counsel prepared comprehensive briefing addressing the statutory and regulatory framework, legislative history, and the governing case law, including extensive citation to authorities and secondary sources—materials.

Further, as discussed above, lead counsel's prior experience litigating P&A access matters did not eliminate the need for substantial work in this case because Defendants disputed whether the access denials were attributable to Board policy and final policymaking authority. That dispute required reasonable time to research and brief the issue, review and respond to Defendants' summary-judgment designations, and conduct discovery—including multiple depositions—to confirm the factual and policy basis for the denial. Defendants' decision to contest the policy/final-policymaker predicate—and to maintain that dispute through the summary-judgment and discovery phases—directly drove the additional work reflected in counsel's time records. Notably, the stipulated facts were reached only after Plaintiff had already undertaken substantial preparation

to depose Board representatives; the stipulations functioned as a substitute for that testimony, not a reason the underlying preparation was unnecessary.

Accordingly, while P&A access litigation is not new to Plaintiff's counsel, this case presented difficult, case-specific issues that justified the time billed by Ms. Mitchell and Mrs. Carter, as detailed in their declarations and contemporaneous time records included in the Appendix.

### 3. *Skill Requisite to Perform the Legal Services Properly*

The *Johnson* court advised that the trial court should "closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. Using this standard, Plaintiff's counsels' work product and abilities demonstrate that counsel had the requisite skills to perform the legal services properly.

### 4. *Preclusion of Other Employment by Attorneys Due to Acceptance of the Case*

DRTx is a non-profit organization with limited staff and funding. Federal litigation taxes the organization and precludes other services or advocacy that might be made on behalf of putative clients. Counsels' work on this case precluded their work on other cases and litigation for other deserving individuals with disabilities whom DRTx seeks to serve.

### 5. *The Customary Fee*

As set forth above in Section II(A)(2)(b), Plaintiff's requested rates fall well within the prevailing market rates for comparable work in this District. In addition, Ms. Mitchell has voluntarily reduced her requested rate to $550.00 per hour and Mrs. Carter has reduced her requested rate to $350.00.

### 6. *The Amount Involved and the Results Obtained*

The court in *Johnson* was clear that while the amount of damages was a relevant consideration in awarding fees, "that consideration should not obviate court scrutiny of the decision's effect on the law. If the decision corrects across-the-board discrimination affecting a large class of employees, the attorney's fee award should reflect the relief granted." *Id.* at 718.

The "results obtained" strongly support the requested fee. This case sought declaratory and injunctive relief to enforce DRTx's federally mandated monitoring-access authority under the P&A Acts at KISD campuses serving students with disabilities, including "traditional" campuses. The agreed Monitoring Access Protocols embodied in Exhibit A provides clear, operational guidance that will discourage other schools from denying DRTx immediate unaccompanied monitoring access. These denials would otherwise have resulted in needless litigation and delay in the P&A being able to promptly monitor school districts after receiving allegation of abuse. This impact cannot be overstated as the population of students with disabilities in Texas is approximately 1.2 million. *See, Enrollment in Texas Public Schools 2024-25*, Texas Education Agency (2026), *available at:* https://tea.texas.gov/reports-and-data/school-performance/accountability-research/enroll-2024-25.pdf, at p.4 (Enrollment for 2024-2025 school year for individuals with disabilities which includes both Section 504 and Special education students.)(last visited on Feb. 11, 2026).

If this Court had not affirmed DRTx's authority to access KISD campuses, other P&As may also have been stymied in their federal mandates to access school campuses. Since there is not a large universe of cases discussing the P&A Acts, it is common for courts to rely on cases from other jurisdictions. A decision denying Plaintiff monitoring access to KISD campuses in this

instance would thus likely have curtailed monitoring into abuse of students with disabilities in public schools nationwide.

Finally, it should be noted that attorneys' fees awarded to Plaintiff are returned to the DRTx itself, providing additional funds to further Plaintiff's mission and mandate to investigate abuse and neglect of persons with disabilities and undertake legal and other remedies on behalf of this population. Thus, not only does the Order serve to confirm P&As' authority to monitor schools nationally, the award of attorneys' fees itself would result in furthering Plaintiff's mandate locally.

In sum, though DRTx did not seek or receive damages, this Court's ordered relief will affect a large class of individuals; thus, this factor supports Plaintiff's requested attorneys' fees.

### 7. *Experience, Reputation, and Ability of the Attorneys*

As established by their declarations filed in the Appendix as Exhibits A and B, respectively, Ms. Mitchell and Mrs. Carter have the credentials, experience, and expertise in P&A access and disability litigation and enjoy good reputations in these areas. The result in this case speaks to their abilities.

### 8. *Awards in Similar Cases*

Under this factor, the reasonableness of a fee "may" be considered in light of awards made in similar litigation. As discussed *supra* Section II(A)(2)(b), Plaintiff's requested hourly rates are well within the rates recently awarded in the are well within the rates recently awarded in the Southern District in cases to vindicate voting rights and commercial litigation.

In sum, none of the relevant *Johnson* factors support the reduction of Plaintiff's requested attorneys' fees and all cut in favor of this Court granting Plaintiff's Motion and awarding $163,735.00 as reasonable and necessary attorneys' fees.

## V.    DRTX IS ENTITLED TO ITS COSTS

Plaintiff filed a Bill of Costs in addition to this motion pursuant to 28 U.S.C. § 1920. The separately filed Bill of Costs and receipts are included in the Appendix as Exhibit C for the convenience of the Court. Plaintiff seeks costs only for filing its Original Complaint, serving Defendant, and deposition costs, and has exercised discretion to remove travel associated costs.

## CONCLUSION

For the foregoing reasons, Plaintiff Disability Rights Texas respectfully requests that the Court (1) defer any ruling on the merits of Plaintiff's request for attorneys' fees and costs until entry of a final order that incorporates Exhibit A as judicially enforceable relief and/or expressly retains jurisdiction to enforce and interpret the incorporated terms; (2) upon entry of that final order, grant Plaintiff leave to file a short supplemental submission within seven (7) days if necessary; and (3) thereafter award Plaintiff reasonable attorneys' fees of $163,735.00 and recoverable costs of $5,878.85 (total $169,613.85) pursuant to 42 U.S.C. § 1988, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

BETH MITCHELL
State Bar No. 00784613
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
bmitchell@drtx.org

SHILOH CARTER
State Bar No. 24080321
DISABILITY RIGHTS TEXAS

100 Glenborough Drive, Suite 600
Houston, Texas 77067
(832) 584-0607 (Phone)
(512) 454-4816 (Fax)
scarter@drtx.org

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via the

Court's electronic CM/ECF system on counsel of record on February 17, 2026.

BETH MITCHELL