United States District Court
Southern District of Texas
**ENTERED**
September 29, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:23-CV-02973 |
| | § | |
| KLEIN INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the Court are Plaintiff Disability Rights Texas's ("DRTx") Motion for Summary Judgment (Doc. #41)[1]; Defendants Jenny McGown, in her individual capacity and her official capacity as the Superintendent of Klein Independent School District ("KISD"), and Cathy Arellano, in her official capacity as the President of the Board of Trustees for KISD's (collectively, "Defendants")[2] Response (Doc. #44); and DRTx's Reply (Doc. #45). Also pending before the Court are Defendants' Cross-Motion for Summary Judgment (the "Cross-Motion") (Doc. #42), DRTx's Response (Doc. #43), Defendants' Reply (Doc. #46), DRTx's Motion for Entry of Final Order (Doc. #56); DRTx's Motion for Attorneys' Fees and Costs (Doc. #58); Defendants' Response (Doc. #59); and DRTx's Reply (Doc. #62).[3] Having considered the parties' arguments

[1] DRTx also filed an Unopposed Motion for Leave to File its Motion for Summary Judgment with Excess Pages. Doc. #40. The Court grants the Motion and considers DRTx's Motion for Summary Judgment in full. *Id.*

[2] DRTx's original complaint named KISD as a Defendant, but the First Amended Complaint asserts no claim against it, and it is therefore no longer a party. Doc. #19; Doc. #38 at 5, 8.

[3] DRTx also moved to hold its fee-motion deadline in abeyance pending entry of a final order. Doc. #57. Because DRTx has since filed that motion, its request is moot.

and the applicable legal authority, the Court grants in part DRTx's Motion for Summary Judgment in part, Defendants' Cross-Motion, and DRTx's Motion for Entry of Final Order in part.

## I. Background

### a. Factual Background

The Court previously recited the factual background of this dispute at length in its August 6, 2024 Order. *See* Doc. #38. The Court incorporates that factual background and summarizes the facts necessary to analyze the present motions.[4] DRTx is the designated Protection and Advocacy ("P&A") system for individuals with disabilities for the State of Texas. Doc. #41, Ex. 1 at 2. Pursuant to its statutory authority, DRTx sought to monitor several KISD campuses that provide special education programs for students with disabilities, including the Therapeutic and Readiness Center ("TRC")[5], a segregated campus for students receiving special education services. *Id.* at 3. DRTx also requested access to six KISD elementary, intermediate, and high school campuses that provide special education classrooms and programs. *Id.* at 4.

Beginning in March 2023, DRTx made repeated attempts to schedule visits to these campuses with Defendant Jenny McGown ("Dr. McGown"), and counsel for KISD. *Id.* at 3. On May 5, 2023, KISD stated that it did not believe DRTx had federal authority to monitor "traditional schools." *Id.* at 5. On May 14, 2023, KISD informed DRTx that it had "Board approved policies regarding who can access [KISD campuses] and when and as things stand right now [DRTx does] not have that permission." *Id.* Based on the Board Policies, Dr. McGown, in consultation with KISD's legal counsel, made the decision to deny DRTx access at KISD campuses. *Id.* DRTx

---

[4] The parties have submitted a stipulated set of facts, which the Court relies on for this Factual Background. *See* Doc. #41, Ex. 1.

[5] In communications between the parties, the TRC campus is referred to interchangeably as the Therapeutic Education Program ("TEP"). Doc. #41, Ex. 1 ¶ 16.

made additional attempts to schedule visits in June 2023. *Id.* at 6-7. However, in July 2023, Dr. McGown again denied DRTx access. *Id.* at 7.

On September 13, 2023, DRTx emailed the KISD Board of Trustees, describing its federal monitoring authority and plans to monitor TRC, Benfer Elementary School, and Zwink Elementary School. *Id.* at 8. On September 15, 2023, DRTx was allowed partial, accompanied monitoring access to TRC, accompanied by KISD's counsel and campus staff. *Id.* at 9. However, when DRTx staff attempted to monitor Benfer Elementary School, a KISD police officer, acting on an administrative decision made before DRTx arrived, denied them entry and issued verbal criminal trespass warnings, barring access to Benfer and any other KISD campus. *Id.*

On March 28, 2024, after this litigation had commenced, DRTx gave courtesy notice of its intent to monitor TRC on April 4, 2024. *Id.* at 11. In response, KISD limited the monitoring window to 10:00 a.m. to 2:00 p.m. *Id.* The day of the visit, KISD prohibited DRTx from speaking with any persons with disabilities and did not allow reasonable unaccompanied access. *Id.* DRTx left without conducting a monitoring visit. *Id.*

### b. Procedural Background

On August 11, 2023, DRTx filed suit in this Court. Doc. #1. On September 25, 2023, DRTx filed a First Amended Complaint in which it asserts claims against (1) Dr. McGown in her individual and official capacities for alleged violations of the P&A Acts; and (2) Dr. McGown and Cathy Arellano[6] in their official capacities for violating 42 U.S.C. § 1983 ("Section 1983"). Doc. #19 at 13-16. DRTx additionally seeks a declaratory judgment and a permanent injunction to

---

[6] DRTx initially sued Rob Ellis in his official capacity as the President of the KISD Board of Trustees. *See* Doc. #19. However, on June 16, 2024, Rob Ellis filed a Notice of Automatic Substitution with the Court that Cathy Arellano ("Arellano") was elected President of the KISD Board of Trustees. Doc. #35. Accordingly, Arellano is the proper official-capacity Defendant as the current President of the KISD Board of Trustees.

enforce its statutory access rights. *Id.* at 16-17. On October 1, 2024, the parties cross-moved for summary judgment. Doc. #41; Doc. #42.

The Court heard argument on the Motions for Summary Judgment on November 7, 2025, and directed the parties to confer on proposed monitoring-access terms. At a January 16, 2026, status conference, counsel reported that an agreement had been reached. DRTx then moved for entry of a final order incorporating the parties' Monitoring Access Protocols (the "Protocols") as a permanent injunction (Doc. #56), and has since moved for attorneys' fees (Doc. #58). Defendants oppose entry of any judgment on the Protocols: although they agree to the Protocols' substance, they maintain that they never consented to an injunction or to this Court's continuing jurisdiction, and that the Cross-Motions for Summary Judgment must be decided. Doc. #59 at 2-5, 8-14; Doc. #62 at 1-3. Because Defendants do not consent to entry of an agreed judgment, the Court resolves the Cross-Motions for Summary Judgment on the merits.

## II. Legal Standard

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact." *Carnes Funeral Home, Inc. v. Allstate Ins. Co.*, 509 F. Supp. 3d 908, 915 (S.D. Tex. 2020) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). If that burden is met, "the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial." *Id.* (citing FED. R. CIV. P. 56(e)). Courts must "construe[] 'all facts and inferences in the light most favorable to the nonmoving party.' Summary judgment may not be thwarted by conclusional allegations,

unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). On cross-motions, the Court reviews each motion independently, viewing the evidence and inferences in the light most favorable to the party opposing that motion. *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014). The material facts here are stipulated. Doc. #41, Ex. 1 at 2-13.

## III. Analysis

### a. The P&A Acts

As an initial matter, the Court finds that a brief review of the statutory framework is necessary. The Protection and Advocacy Acts ("P&A Acts") were enacted to safeguard and advance the rights of individuals with disabilities and mental illnesses. *Disability Rights Tex. v. Pacillas*, 690 F. Supp. 3d 654, 659 (W.D. Tex. 2023). To further this objective, Congress requires each state to designate a P&A system and equips that system with the access necessary to protect the rights and safety of individuals with disabilities. *See Disability Rights Tex. v. Hollis*, 103 F.4th 1058, 1061 (5th Cir. 2024) (explaining that "P&A [systems] shall have broad investigatory authority to carry out their responsibility to protect individuals with mental illness and to advocate on their behalf"). In Texas, DRTx serves as the federally designated P&A system. *Id.* at 1059; Doc. #41, Ex. 1 at 2.

Under the P&A Acts, DRTx is authorized to (1) "pursue administrative, legal, and other appropriate remedies" on behalf of individuals with disabilities or mental illnesses; (2) access facilities that provide care, treatment, services, or supports to individuals with disabilities or mental illnesses, and (3) access records related to their clients. *Pacillas*, 690 F. Supp. 3d at 661 (citing relevant portions of the P&A Acts). Regulations implementing the P&A Acts provide that, when investigating an incident of abuse or neglect, a P&A system, such as DRTx, must be afforded

"reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are accessible to them." 45 C.F.R. § 1326.27(b)(2). The regulations separately guarantee "reasonable unaccompanied access to service providers for routine circumstances." *Id.* § 1326.27(c).

Courts have consistently recognized that non-residential schools providing special education or related services qualify as facilities and locations subject to P&A oversight. Specifically, such schools qualify as facilities that provide "care and treatment" under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") and as locations under the Protection and Advocacy for Individuals with Developmental Disabilities Act ("PADD"). Courts addressing this issue have repeatedly upheld this interpretation. *See Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 726 (7th Cir. 2006) (school providing special education program "easily meets the definition of a facility"); *Disability Rights New York v. N. Colonie Bd. of Educ.*, No. 1:14-CV-0744, 2016 WL 1122055, at *5 (N.D.N.Y. Mar. 21, 2016) (locations within an elementary school utilized by students with mental illness or disabilities are subject to the investigative powers of the P&A system); *Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 907 (E.D. Mich. 2015) (finding Flint Community Schools is a "service provider" under the PADD Act); *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 240 (2d Cir. 2006) ("[T]he Academy is a school that provides a therapeutic educational program for students who are seriously emotionally disturbed. It is therefore a facility to which OPA must have reasonable access under PAIMI.").

This Court adopts the same interpretation. KISD, which provides special education and related services, is subject to P&A access. Defendants' contention that the P&A Acts do not reach

traditional campuses finds no footing in the statutory text, which turns on the services a facility provides, not on whether it also serves students without disabilities. Doc. #42 at 5-10; Doc. #46 at 2-4; *See N. Colonie*, 2016 WL 1122055, at *5. Accordingly, DRTx must be afforded "reasonable unaccompanied access" to KISD campuses. Such access, however, is limited to the areas, programs, and students covered by the P&A statutes, specifically those receiving services, care, or treatment related to their disabilities or mental health needs. *See Disability Rts. New York*, 2016 WL 1122055, at *5 (explaining that while a P&A system cannot investigate students who are not disabled or mentally ill, the fact that the setting is a school does not prevent the P&A system from accessing and monitoring programs that serve students who are covered under the P&A statutes). Such access ensures that DRTx can fulfill its statutory mission to protect the rights, safety, and welfare of students with disabilities and mental illness within KISD.

**1. Scope and Purpose of P&A Access**

Congress has empowered P&A systems with the right to access facilities serving individuals with disabilities. *See* 42 U.S.C. §§ 10805(a)(3), 15043(a)(2)(H); 29 U.S.C. § 794e(f)(2). The implementing regulations further reinforce this directive. Under the PADD regulations, a P&A system "shall have reasonable unaccompanied access to service providers for routine circumstances," including all areas used by or accessible to individuals with developmental disabilities, "at reasonable times, which at a minimum shall include normal working hours and visiting hours." 45 C.F.R. § 1326.27(c); *see also* 42 C.F.R. § 51.42(c) (providing the same access under PAIMI to "facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours"). Access to service providers "shall be afforded immediately upon an oral or written request by the P&A system." 45 C.F.R. § 1326.27(c). "Unaccompanied access" is defined to mean that a P&A system has the opportunity to

"communicate privately with individuals" with disabilities on a regular basis, both formally and informally, "by telephone, mail and in person." 45 C.F.R. § 1326.27(d); 42 C.F.R. § 51.42(d). In sum, the implementing regulations establish that P&A systems must be afforded prompt access to facilities during normal operating hours and permitted to meet with the individuals they serve privately and without facility supervision.

This broad access is fundamental to the effectiveness of the P&A system. Without the ability to promptly enter facilities and speak confidentially with those receiving services, a P&A system could not adequately monitor for abuse or neglect, or inform individuals of their rights. As the Fifth Circuit has observed, further restricting a P&A system's access would render the requirement that each State maintain an advocacy program effectively "comatose if not moribund." *Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991) (construing the predecessor to the DD Act's P&A provision). In *Cotten*, the Fifth Circuit affirmed a permanent injunction that secured the system's access to residents, including private meetings, while imposing time and place limits tailored to minimize interference with the facility's programs. *Id.* at 1057, 1059.

**b. Violations of the P&A Acts**

**1. Dr. McGown: Official-Capacity Claims**

Claims against Dr. McGown in her official capacity are effectively claims against KISD itself. *See Garza v. Escobar*, 386 F. Supp. 3d 794, 804 (S.D. Tex. 2019) ("A [Section] 1983 suit against a person in his official capacity is a suit against his office, and is no different from a suit against the entity itself."). The P&A Acts authorize DRTx to "pursue administrative, legal, and other appropriate remedies" to protect the individuals it serves, and Defendants challenge DRTx's ability to seek equitable relief under the Acts only as to Dr. McGown's individual capacity. 42 U.S.C. §§ 10805(a)(1)(B), 15043(a)(2)(A)(i); *see* Doc. #42 at 14-15. The undisputed record

reflects that DRTx made multiple requests to access KISD campuses that provided services to students with disabilities, including TRC and other special education programs, and that those requests were denied or unreasonably delayed, including by Dr. McGown herself. Doc. #41, Ex. 1 at 5, 7-11. These actions directly impeded DRTx's statutory authority to monitor the care, treatment, and services provided to students with disabilities. The Court concludes that Dr. McGown is liable in her official capacity for violating the P&A Acts, and summary judgment is granted in favor of DRTx on this claim.

**2. Dr. McGown: Individual-Capacity Claims**

DRTx also asserts that Dr. McGown violated the P&A Acts in her individual capacity. Doc. #19 at 13-14; *see* Doc. #38 at 8-9. Defendants contend that the equitable relief DRTx seeks is unavailable against Dr. McGown personally. Doc. #42 at 14-15. The Court agrees. DRTx seeks only declaratory and injunctive relief. Doc. #19 at 16-17. Relief of that kind runs against the office, not the officeholder: an injunction requiring KISD to afford monitoring access binds Dr. McGown only while she serves as Superintendent, and it binds her successors in her place. *See* Fed. R. Civ. P. 25(d), 65(d)(2). The official-capacity claims resolved above give DRTx complete prospective relief, and the individual-capacity claim adds nothing to it. Because DRTx seeks no damages, the Court does not reach Dr. McGown's qualified-immunity defense. *See Hershey v. City of Bossier City*, 156 F.4th 555, 561 (5th Cir. 2025), *reh'g denied,* 163 F.4th 976 (5th Cir. 2026) (qualified immunity is not available in suits seeking injunctive relief). Accordingly, the Court grants summary judgment in favor of Dr. McGown on the individual-capacity claim.

**c. Official-Capacity Claims Under Section 1983**

DRTx further asserts Section 1983 claims against Dr. McGown and Arellano in their official capacities. As noted above, an official-capacity suit is effectively a suit against the entity

itself. *See Garza*, 386 F. Supp. 3d at 804. Accordingly, Dr. McGown in her official capacity is effectively a Defendant for purposes of KISD's actions, and Arellano in her official capacity represents the Board of Trustees, which is KISD's final policymaking authority. *See Eugene v. Alief* Indep. *Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (explaining that under Texas law, the board of trustees holds final policymaking authority for an independent school district); Doc. #41, Ex. 1 at 3.

To establish municipal liability under Section 1983, a plaintiff must show "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). Section 1983 reaches the deprivation of rights secured by federal statutes as well as by the Constitution. *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citing *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980)). Defendants do not contend that the P&A Acts' access provisions are unenforceable through Section 1983; they contest only municipal liability. *See* Doc. #42 at 15-19; Doc. #44 at 8-14. The Court therefore treats the question as forfeited and does not decide it.

To hold a local governmental entity liable under Section 1983 for violation of a federal law, a plaintiff must show that the violation was caused by an official policy or custom, or was committed by an official with final policymaking authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, the challenged conduct was grounded in official KISD policy: KISD enforced its Board-adopted visitor policies, GKA(Local) and GKC(Local) (the "Policies"), to prohibit DRTx's unsupervised access. Doc. #41, Ex. 1 at 5, 11; *see also* Doc. #42, Ex. 3 at 17–18, 20–21 (Policies). The Policies, which generally require that visitors check in, be escorted, and have a legitimate purpose, were the mechanism by which DRTx was denied the immediacy and privacy of access that federal law guarantees. *See* Doc. #42, Ex. 3 at 20-26. The parties stipulate

that Dr. McGown and her senior administrators denied DRTx access "based on" the Policies, with the Board's full knowledge. Doc. #41, Ex. 1 at 5, 11. Defendants respond that the Policies are facially neutral because they merely commit access decisions to administrators' discretion. Doc. #44 at 9-11. The Court need not decide whether the Policies are unlawful on their face. *See Verastique v. City of Dallas*, 106 F.4th 427, 435 (5th Cir. 2024) (policy is facially unlawful if it "affirmatively allows or compels" the violation). A facially lawful policy also supports municipal liability when the policymaker maintains it with deliberate indifference to its known or obvious consequences and the policy is the moving force behind the violation. *Tinoco v. City of Hidalgo, Texas*, No. 23-40543, 2025 WL 655079, at *9 (5th Cir. Feb. 28, 2025). As applied to a P&A system, those provisions make access contingent on the permission of the entity being monitored, which is the very condition federal law forbids. And, because the denials at issue were made "based on" the Policies, Defendants' objection that DRTx seeks to impose liability through respondeat superior fails. Doc. #46 at 4; *see Monell*, 436 U.S. at 691, 694 (holding that a local government is liable under § 1983 only when its own policy or custom, not merely its employees' conduct, inflicts the injury). To the extent the Policies do not accommodate P&A access rights, the Court finds that they conflict with federal requirements and are therefore preempted.

Here, the undisputed record reflects that DRTx gave written notice on March 16, 2023, of its intent to monitor TRC. Doc. #41, Ex. 1 at 3. By July 2023, the parties discussed dates, but KISD imposed conditions requiring accompaniment, pre-arrangement, and time-of-day limits. Doc. #41, Ex. 1 at 6-7. Furthermore, when DRTx arrived on April 4, 2024, KISD did not permit private communications with staff and students, and DRTx left without completing the monitoring visit. And on the elementary school campuses, KISD denied entry and issued verbal trespass warnings to DRTx personnel on September 15, 2023, warning they were barred from all KISD campuses. The record shows that KISD's counsel and Superintendent directed the KISD Police

Department to continue denying entry thereafter. *Id.* at 8-11. These restrictions and denials conflict with the regulatory requirements of "immediate" and "reasonable unaccompanied access," including the opportunity to communicate privately with students during normal working hours. 45 C.F.R. § 1326.27(c)-(d); 42 C.F.R. § 51.42(c)-(d).

KISD argues the P&A Acts allow "reasonable" limits and that DRTx sought "unfettered" access. But "reasonable unaccompanied access" is defined by regulation to include access "immediately upon an oral or written request" and the ability to speak privately with covered individuals. These are features KISD categorically restricted at TRC and entirely foreclosed at the elementary campuses. On this record, KISD's blanket accompaniment requirement, denial of private communications, time-of-day limitations, and campus-wide ejections cannot be reconciled with the regulatory requirements. Defendants also contend that unaccompanied access is unworkable on traditional campuses because DRTx cannot locate covered classrooms without KISD's direction. Doc. #46 at 3-4. That concern bears on how access is structured, not on whether it must be afforded. Orientation to a campus and transit escorts that end on arrival are consistent with unaccompanied access; blanket accompaniment and outright exclusion are not.

Here, the summary judgment evidence demonstrates that the Board of Trustees was informed of DRTx's requests, yet did not modify or make an exception to the Policies to comply with federal law. Doc. #41, Ex. 1 at 8, 10-12. The Board thus had actual notice that applying the Policies to DRTx would deny the access federal law requires, and it kept the Policies in place while administrators continued to deny access based on them. A policymaker's "continued adherence to an approach that [it] know[s] or should know has failed" to prevent violations of federal rights establishes deliberate indifference. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Bryan Cnty.*, 520 U.S. at 407) (deliberate indifference requires that the policymaker disregarded a known or obvious consequence of its policy). The Court finds that KISD's official

policies, maintained by the Board with knowledge of their application to DRTx, were the moving force behind the violation of DRTx's rights. Thus, KISD, through the official-capacity Defendants, is liable under Section 1983 for the denial of DRTx's federal access rights.

As a prevailing party enforcing federally protected rights, DRTx may be entitled to recover its reasonable attorneys' fees and costs from the governmental entity under 42 USC § 1988, upon proper motion and proof. That issue will be addressed post-judgment.

## IV. Declaratory Judgment

Plaintiff seeks a declaratory judgment that the P&A Acts and regulations require immediate, reasonable, unaccompanied monitoring access, including private communications, to KISD campuses that provide services to students with disabilities. Although the parties negotiated the Protocols after the Court's November 7, 2025 hearing (Doc. #56), those Protocols have not been executed, and Defendants describe their agreement as a "voluntary, good-faith decision," "not a judicially compelled alteration of [their] conduct," while refusing to consent to its entry as a judgment. Doc. #59 at 5, 12. Defendants have never conceded that the P&A Acts entitle DRTx to the access it seeks. *See* Doc. #44 at 6-8; Doc. #46 at 2-4. An unexecuted agreement that Defendants remain free to abandon does not resolve the parties' dispute over DRTx's federal access rights. An actual controversy therefore exists, and declaratory relief is appropriate. *See* 28 U.S.C. § 2201(a).

## V. Injunctive Relief

A permanent injunction requires proof of: (1) irreparable injury; (2) inadequacy of remedies at law; (3) a balance of hardships favoring equitable relief; and (4) consistency with the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). The record shows that when DRTx attempted to monitor, KISD imposed blanket accompaniment, no-private-communication rules, narrow time

windows, and campus denials backed by verbal trespass warnings. Those limitations prevented DRTx from conducting the confidential monitoring that the regulations contemplate, causing DRTx to leave without completing monitoring visits. The lost opportunity to monitor and to communicate privately with covered individuals is an intangible, mission-critical injury not compensable by money damages and thus irreparable. There is no adequate remedy at law for impaired statutory oversight. Defendants argue DRTx could have proceeded with accompaniment and coordination with school administrators, but the regulations' unaccompanied and immediate access requirements, as well as the right to private communications, cannot be satisfied by escorted, pre-staged school visits that foreclose confidential interactions.

Nor does the parties' negotiation of the Protocols make injunctive relief unnecessary. Defendants contend that the Protocols resolve DRTx's P&A claims out of court. Doc. #59 at 3. But the protocols have not been executed, Defendants continue to contest the scope of DRTx's access rights, and nothing in the record indicates that the Board has revised the Policies or instructed administrators that they do not bar DRTx's access. *Id.* at 5, 12; *see* Doc. #44 at 6-8; *see also* Doc. #41, Ex. 1 at 11-12. A defendant's voluntary conduct moots a claim for prospective relief only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *affirmed*, 563 U.S. 277 (2011)). Defendants have not made that showing.

The balance of equities also favors injunctive relief. Plaintiff seeks compliance with baseline federal requirements and agrees to neutral sign-in and identification procedures as well as agreeing to minimize disruption with student schedules. Doc. #56, Ex. 1 at 2-3. The hardships asserted by Defendants—generalized safety and student privacy concerns—can be addressed through narrow, case-specific safety measures without eroding the core unaccompanied and

immediate access the regulations mandate. Finally, the public has a strong interest in the enforcement of federal law and in the protection of students with disabilities through effective P&A monitoring. An injunction aligning KISD's practices with the federal scheme promotes both interests. The Court will set out the terms of the permanent injunction in a separate order, as Rules 58 and 65(d)(1) require. Because the parties agree on the substance of the Protocols, and those Protocols balance DRTx's access rights against KISD's legitimate safety and instructional interests, the Court will adopt their access terms as the terms of the injunction. Doc. #59 at 2, 12; Doc. #56, Ex. 1.

## VI. Conclusion

The Court GRANTS Plaintiff's Unopposed Motion for Leave to File Excess Pages. Doc. #40. Plaintiff's Motion for Summary Judgment is GRANTED IN PART as to DRTx's official-capacity claims under the P&A Acts and Section 1983 and DENIED as to its individual-capacity claim against Dr. McGown. Doc. #41.

Defendants' Motion for Summary Judgment is GRANTED IN PART. Doc. #42. Plaintiff's individual-capacity claims against Dr. Jenny McGown are DISMISSED WITH PREJUDICE. However, all other relief sought by Defendants on summary judgment is DENIED.

The Court DECLARES that Defendants' refusal to allow immediate, reasonable, unaccompanied monitoring access, including private communications, to the areas and programs on KISD campuses that are used by or accessible to students with disabilities violates the P&A Acts. KISD Board Policies GKA(Local) and GKC(Local) are preempted, and may not be enforced, to the extent they condition or deny that access. A final judgment and permanent injunction will issue by separate order.

Plaintiff's Motion for Entry of Final Order is GRANTED IN PART, to the extent the Court will enter a final judgment and permanent injunction adopting the access terms of the parties'

Agreed Monitoring Access Protocols and binding both official-capacity Defendants and, through them, the KISD Board of Trustees and KISD, and is otherwise DENIED. Doc. #56.

DRTx also moved to hold its fee-motion deadline in abeyance pending entry of a final order. Doc. #57. Because DRTx has since filed that motion, its request is MOOT. DRTx's Motion for Attorneys' Fees and Costs (Doc. #58) will be addressed after entry of final judgment. Within fourteen (14) days of the entry of final judgment, each party may file a supplemental brief, not to exceed five (5) pages, addressing the effect of the Court's rulings and the final judgment on DRTx's entitlement to fees and costs.

It is so ORDERED.

SEP 28 2026

Date

The Honorable Alfred H. Bennett
United States District Judge